JOHN SCOTT and WALUPO, his Wife, *vs.* EMMA W. CROWNINGBURG.

EXCEPTIONS TO FINDINGS OF DOLE, J.

JULY TERM, 1889.

JUDD, C.J., McCULLY, PRESTON, BICKERTON and DOLE, JJ.

The plaintiffs had the care of defendant's child, but she was under the authority and management of her father during the whole period, he being able and willing to support her.   No contract, express or implied, was entered into at any time for the necessaries furnished.   No credit was given to defendant by plaintiffs.

Held, that defendant's estate was not liable, and that no contract can be inferred or implied, because subsequently the child was taken away.

OPINION OF THE COURT, BY BICKERTON, J.

This case comes here on a bill of exceptions to the findings of law and fact by Mr. Justice Dole, who heard this case on 28th

May, 1889. Jury having been waived at the April Term, 1889. The decision being filed June 20th, 1889, giving judgment for defendant.

The decision excepted to sets out fully the facts of the case, and the argument of counsel, and finds as follows : "That the defendant, through the whole period during which the plaintiffs had the care of her, was under the authority and management of her father and that he was able and willing to support her ; this being the case, the defendant's estate is not liable.

That no contract with the defendant, express or implied was entered into at any time for the necessaries furnished. That no credit was given to the defendant by plaintiff."

Upon a careful examination of this case, we are of opinion that the decision of Mr. Justice Dole should be sustained ; the evidence clearly sustains the findings of the Court. In *Mokuhia vs. McCandless*, 5 Hawn., 370, the Court says, " certainly when the child was taken there was no intention to make any charge for keeping it. How then can such an intention or contract be inferred or implied, because subsequently the child was taken away? It was a contract when they took the child, or it never became one." This language exactly fits the case before us.

Exceptions overruled.

*C. L. Carter*, for plaintiffs.

*Cecil Brown*, for defendant.

---

DECISION OF DOLE, J., APPEALED FROM.

The defendant in this case is a minor and was at the time of the alleged promise of a very tender age, a baby in arms. The plaintiffs claim $300 for goods sold and delivered, work done and materials provided and money paid by them to and for the defendant at her request and upon her promise to pay for the same, and allege that the things so furnished were necessaries. They do not contend that the defendant personally entered into an agreement, but that there is an implied contract binding her because Mr. John Wilder, her uncle by marriage, acting for her,

requested the plaintiffs to take charge of her. It is not clear that Mr. Wilder was acting for her; he does not remember asking Malupo to take charge of defendant but thinks that the suggestion came from her, and if he did make the request, as seems quite probable from the evidence, it is more likely that he was acting as agent of defendant's father, than as her agent· The defendant's father was confined at the time in jail, and had placed the defendant in charge of a relative, who becoming ill desired Malupo to take charge of her; in whatever way the request reached Malupo, it is rather to be regarded as coming from the agent of the defendant's father than from her own agent; this view is strengthened by testimony showing that the father's approval was asked for the new arrangement, and other and very definite testimony showing that Mr. Wilder was the agent of defendant's father in money matters, some of which particularly related to the support of the defendant.

The defendant's guardian, Mr. Cecil Brown, appears for her and denies her liability on the grounds, that her father being made liable by the statute for the support of his children, this defendant cannot be made liable unless it is shown that she was abandoned by her father or that he was unable to support her; also that a contract will not be implied with a minor when she is below the age of understanding; also that no credit was given to the defendant by the plaintiffs, but application was made to the father for assistance; also that the care of the child was gratuitous on the part of the plaintiffs. He does not contend that the things furnished were not necessary.

It is satisfactorily shown by the evidence that although the defendant's father was in jail a part of the time during which the services and goods are claimed to have been furnished, he did not on that account neglect the defendant. He superintended to some extent the care that she required and furnished a considerable amount of money for her maintenance. It was contended by plaintiffs' counsel that the money furnished by defendant's father to Malupo was for carriage hire in order that she might bring the defendant to see him, but the testimony

shows more than this: the defendant's father says, "Malupo came to me and asked me to help her. I said $20 a month? She said no, that is too much, so I said $10 or $15;" Malupo says, "generally it was spent for carriage hire, sometimes for food for the children and candy." John Scott says, "the $10 was for express hire, clothes and doctors' bills."

It is clear from Malupo's testimony that when she began to take care of defendant she did not intend to make any charge. She says, "I heard they had property before their mother died; when I first took them I did not intend to charge." "I took them at first on account of the trouble they were in;" "I first made up my mind to charge for them when Mary got over her pilikia"; "when I made up my mind I did not notify their father or John Wilder;" "I made up my mind if the children had property I would make a claim, if they had no property I wouldn't."

From this showing, the argument of plaintiffs' counsel that Wilder as defendant's agent made an agreement with Malupo, falls to the ground, for it is certain that no agreement at all was made at the beginning, and afterwards when Malupo made up her mind to charge for her services, she did not notify either John Wilder or defendant's father, and there was no other possible person with whom as defendant's agent she might have contracted.

I am convinced that when she began to take care of defendant she did it as a family connection, she being her aunt by marriage, and had no thought of charging for her services, and there is no evidence to support the theory of a contract entered into afterwards, either actual or implied.

I make the following findings of law and fact:

That the defendant through the whole period during which the plaintiffs had the care of her, was under the authority and management of her father, and that he was able and willing to support her; this being the case, the defendant's estate is not liable. *Kline vs. l'Amoureaux*, 2 Paige, 420, and *Wailing vs. Toll*, 9 Johns., 141.

That no contract with the defendant, express or implied, was entered into at any time for the necessaries furnished; *Mokuhia vs. Mc Candless*, 5 Hawn., 371, and *Luka vs. Fyfe*, 4 Hawn., 569.

That no credit was given to the defendant by the plaintiffs.

Judgment for the defendant.